Miguel GOMEZ

v.

TEXAS COMPANY.

No. 325 of 1955.

United States District Court
E. D. Pennsylvania.

Nov. 10, 1960.

Samuel J. Stark, Philadelphia, Pa., for libellant.

Joseph P. Green, Krusen, Evans & Shaw, Philadelphia, Pa., for respondent.

WELSH, Senior District Judge.

In the related civil action in which the trial was had before the Court and a jury, a verdict was returned in favor of the Texas Company. In this admiralty action, the Court having examined the record in that action and the briefs submitted by counsel herein and having heard the oral argument, now has the responsibility to determine the issue of maintenance and cure. Consequently, we find the facts, enter a discussion and draw conclusions of law as follows:

### Findings of Fact

1. On August 20, 1955, and at all times material to this suit, libellant, Miguel Gomez, was a seaman in the United States Merchant Marine.

2. During the period, August 20, 1955 to September 29, 1955, respondent, the Texas Company, owned, operated and/or controlled the S. S. Maryland, a vessel engaged in coastwise, intercoastal and foreign commerce.

3. During the same period, libellant was in respondent's employ as a member of the crew of respondent's vessel, the S. S. Maryland, in the capacity of wiper.

4. Libellant was physically fit for duty when he joined respondent's vessel, the S. S. Maryland on August 20, 1955, having been so found "fit for duty" upon examination by respondent's physician immediately before joining the vessel.

5. On September 14, 1955 or September 15, 1955, one or two days out of Wilmington, California, on the vessel's return to Jacksonville, Florida, libellant sustained a fracture of the left great toe, while in the service of the respondent's vessel, the S. S. Maryland.

6. Libellant immediately reported the accident and injury to his superior, the third assistant engineer. He was then referred to the captain and the steward, and he likewise informed them of the accident and injury.

7. Libellant received treatment from the steward for the rest of the voyage, the treatment consisting of dressings, bandages and hot epsom salts solutions.

8. By reason of the injury sustained in the service of respondent's vessel, libellant was obliged to leave the vessel at the termination of the voyage at Jacksonville, Florida, on September 29, 1955.

9. Following his discharge from the vessel, libellant returned to his home in Philadelphia and underwent treatment at the outpatient clinic of the United States Public Health Service from October 3, 1955 to October 28, 1955 for fracture of the left great toe and from October 29, 1955 to November 5, 1955 for ulcerative

lesions scattered over the surface of the right hand and lacerations and contusions to the face, at which time he was pronounced "fit for duty" by that facility.

10. From October 29, 1955 to November 25, 1955, when he registered to ship out, libellant continued to experience pain in the left great toe. During this period, the treatment consisted of rest and epsom salts solutions administered by libellant himself.

11. By reason of the injury sustained in the service of respondent's vessel, libellant was disabled during the period September 30, 1955 to November 25, 1955, during which period he benefitted or could have benefitted from medical care and attention. Libellant did not work nor earn any money whatsoever during the aforesaid period of disability.

12. Libellant's disability was in no way due to his own gross misconduct, insubordination or disobedience to orders.

13. Shortly after his discharge from the United States Public Health Service, libellant made demand upon respondent for maintenance and cure. Respondent refused and neglected to pay libellant any maintenance and cure.

### Discussion

█ Respondent's principal contention is that since at the jury trial it offered no evidence that the injury alleged by libellant occurred in any way other than that testified to by libellant and it did offer evidence that no accident in fact occurred aboard its vessel and that libellant was discharged for intoxication, the jury by returning a verdict in its favor must have believed its evidence, and therefore, the Court must find that libellant was not injured while in the service of respondent's vessel. In this connection, we point out that it is possible, and perhaps probable, that the jury found that the injury to the libellant

did occur at the time testified to by him and that libellant was not intoxicated (based on the log's failure to make any mention of libellant's intoxication), and the jury, notwithstanding, found the respondent was not negligent and its vessel was not unseaworthy or that the negligence of the respondent and/or the unseaworthiness of its vessel did not cause libellant's injuries. Under such circumstances despite the verdict of the jury in favor of the respondent the Court could make a finding that libellant was injured while in the service of respondent's vessel. Thus, it is abundantly clear that it is impossible to determine the finding or findings that prompted the jury to decide the case in favor of the respondent. It follows then that in this suit for maintenance and cure the Court is not bound by the verdict of the jury; hence, it exercises its right and discharges its duty by making independent findings of fact.

### Conclusions of Law

█ 1. This Court has jurisdiction over the parties and the subject matter.

2. Libellant is entitled to maintenance and cure at the stipulated rate of $8 per day during the period he benefitted or could have benefitted from medical attention and care.

3. Libellant is entitled to a decree sustaining the libel and awarding him maintenance and cure in the sum of $456 with interest at the annual rate of five per cent from November 26, 1955 and costs.

### Decree

And now, this 10th day of November, 1960, in accordance with our opinion, it is Ordered, Adjudged and Decreed that the within libel is Sustained and the libellant, Miguel Gomez, is awarded the sum of $456 with interest at the annual rate of five per cent from November 26, 1955 and costs.