Jerome S. **MURRAY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21357.

United States Court of Appeals District of Columbia Circuit.

Argued March 6, 1968.

Decided Oct. 31, 1968.

preme Court of New Jersey, pro hac vice, by special leave of court, with whom Asst. Atty. Gen., Edwin L. Weisl, Jr., Messrs. David G. Bress, U. S. Atty., and Alan S. Rosenthal, Attorney, Department of Justice, were on the brief, for appellee. Messrs. Morton Hollander, Attorney, Department of Justice, and Henry J. Monahan, Asst. U. S. Atty., also entered appearances for appellee.

Before BURGER, McGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge.

This is an appeal from summary judgments dismissing appellant's third-party claims against the United States. Appellant Murray owns a building which he leased to the United States. Alice Johnson, a government employee, was injured in a falling elevator in the building and received benefits under the Federal Employees' Compensation Act (FECA).[1] In addition she sued Murray for his negligence as the owner. He answered the complaint and filed two separate third-party claims against the United States under the Federal Tort Claims Act.[2] The first claimed contribution was due, in view of the government's responsibility for the injury. An amendment presented the second claim, seeking indemnity from the government based on provisions of the lease. We agree with the dismissals of these claims and affirm.

## I. THE CONTRIBUTION CLAIM

The federal government is liable under the Federal Tort Claims Act "in the same manner and to the same extent as a private individual under like circumstances."[3] This permits the United States to be impleaded as a third-party defendant to answer the claim of a joint tort-feasor for contribution.[4] However, the government may not be impleaded in a situation like that before us unless a private party could

Mr. David F. Grimaldi, Washington, D.C., with whom Messrs. Richard W. Galiher, William E. Stewart, Jr., and William H. Clarke, Washington, D.C., were on the brief, for appellant.

Mr. Daniel Joseph, Attorney, Department of Justice, of the bar of the Su-

1. 5 U.S.C. § 8101 *et seq.* (Supp. III, 1968).

2. 28 U.S.C. § 2671 *et seq.* (1964), *as amended* (Supp. III, 1968).

3. 28 U.S.C. § 2674 (1964).

4. United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). Cf. St. Louis-San Francisco Ry. v. United States, 187 F.2d 925 (5th Cir. 1951).

be impleaded under the local law.[5] Generally, the common law of the District of Columbia recognizes rights of contribution between joint tort-feasors.[6] There is no right of contribution, however, unless there is a joint liability of both parties to the injured person.[7]

■ We hold that the Federal Employees' Compensation Act (FECA) precludes a tortfeasor held liable to a government employee from suing to obtain contribution from the government.

■ As a general rule, workmen's compensation statutes terminate the private employer's common law tort liability and substitute a duty to pay a prescribed compensation not based on fault. That remedy is made exclusive. In such a situation the employer cannot be a joint tortfeasor. Since there is no common liability between the employer and the third-party defendant sued in tort, the employer cannot be forced to contribute to the other defendant. The leading case under the Longshoremen's and Harbor Worker's Compensation Act[8] (Longshoremen's Act), denying contribution in view of the exclusivity provision, is American Mutual Liability Co. v. Matthews, 182 F.2d 322 (2d Cir. 1950). We approve the District Court opinions applying the rule of the *Mathews* case both to private employees in the District of Columbia, who are covered by an extension of the Longshoremen's Act,[9] and to government employees, who are covered by the FECA,[10]

which contains an exclusive liability provision that has been referred to as "nearly identical." See Weyerhaeuser Steamship Co. v. United States, 372 U. S. 597, 602, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963).

*Weyerhaeuser* is relied on by appellant, and we have considered it carefully. There the Court held that the exclusivity provision of the FECA could not be interposed as a bar by the government when a government employee on a dredge, who obtained compensation under the FECA, also obtained a judgment from the owner of another ship involved in a collision with the dredge. That owner was held entitled to sue the United States under the Public Vessels Act. The Court noted that the FECA's exclusivity provision did not preclude reimbursement based on a contract to indemnify. Ryan Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133 (1956). And the Court held that the same result ensued where the correlative rights and duties of the two shipowners were established not by contract but by a rule of admiralty law, which for more than 100 years has established a rule of divided damages.[11]

Late in 1963 there were indications that the *Weyerhaeuser* rule would be extended so that FECA's exclusivity provision would be held inapplicable to preclude ordinary actions under the Tort Claims Act seeking contribution from the government.[12]

---

5. United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399 (1951) ; United States v. Inmon, 205 F.2d 681 (5th Cir. 1953) ; Ford v. United States, 200 F.2d 272 (10th Cir. 1952).

6. George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219 (1942).

7. Yellow Cab Co. v. Dreslin, 86 U.S.App. D.C. 327, 328, 181 F.2d 626, 627, 19 A.L.R.2d 1001 (1950).

8. 33 U.S.C. § 905 (1964).

9. The law extending the Longshoremen's Act to employees in the District of Columbia appears in D.C.Code, § 36–501 (1967). The relevant opinions are those

of Judge Holtzoff in Liberty Mut. Ins. Co. v. Vallendingham, 94 F.Supp. 17 (D. D.C.1950), and of Judge Keech in Coates v. Potomac Elec. Power Co., 95 F.Supp. 779 (D.D.C.1951).

10. Busey v. Washington, 225 F.Supp. 416, 423 (D.D.C.1964).

11. 372 U.S. at 603, 83 S.Ct. 926. As to the FECA, the Court noted in a dictum stressed by appellant, "there is no evidence whatever that Congress was concerned with the rights of unrelated third parties." 372 U.S. at 601, 83 S.Ct. at 929.

12. Within a month after deciding *Weyerhaeuser* the Court issued an order in

In 1964 a different result was reached, after extensive discussion, in United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir. 1964), cert. dismissed sub nom. United Air Lines v. United States, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549. Following a mid-air collision between a United Air Lines plane, carrying government employees, and a military aircraft, the government employees and representatives sued United Air Lines. United sought contribution or non-contractual indemnity from the government. The Ninth Circuit dismissed United's third-party claim and distinguished *Weyerhaeuser*, saying (335 F.2d at 403):

> The divided damage rule is based upon the duty which each shipowner owes the other to navigate safely irrespective of any duty to the person injured. On the other hand neither contribution nor indemnity may be awarded without the support of liability on the part of the indemnitor to the person injured.

The court held that the exclusive liability provision of § 7(b) of the FECA eliminated any tort liability of the government to its employees and therefore undercut the third party claim.

The *United Air Lines* opinion did not reach the Supreme Court,[13] but the

Ninth Circuit adhered to its United Air Lines opinion in Wien Alaska Air Lines v. United States, 375 F.2d 736 (1967), and certiorari was denied, 389 U.S. 940, 88 S.Ct. 288, 19 L.Ed.2d 291 (1967). These rulings were relied on for denial of a contribution claim against the United States in Maddux v. Cox, 382 F.2d 119 (8th Cir. 1967).

■ The indemnity aspect of these decisions will be considered further, but certainly we approve the dismissal of the claim for contribution, since contribution is an equitable doctrine imposing a duty on one tortfeasor to another that is applicable only when the tortfeasors have a concurring liability to the same victim. Coates v. Potomac Elec. Power Co., *supra*, n. 9.

■ Any inequity residing in the denial of contribution against the employer is mitigated if not eliminated by our rule in Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962). *Martello* holds that where one joint tortfeasor causing injury compromises the claim, the other tortfeasor, though unable to obtain contribution because the settling tortfeasor had "bought his peace," is nonetheless protected by having his tort judgment reduced by one-half, on the theory that one-half of the claim was sold by the victim when he executed the settlement.[14] In our situ-

---

Treadwell Constr. Co. v. United States, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), which vacated the judgment in Drake v. Treadwell Constr. Co., 299 F.2d 789 (3d Cir. 1962), and remanded for further consideration in the light of *Weyerhaeuser*. In *Treadwell* the Third Circuit had held the exclusivity provision of the FECA to preclude a claim in contribution against the government by a joint tortfeasor who had been successfully sued by a government employee. On the remand the District Court allowed contribution and the government did not appeal. Other actions taken at about this time by the government as litigant and affected district judges seem to have assumed, without further discussion, that *Weyerhaeuser-Treadwell* permitted a contribution claim notwithstanding the FECA's exclusivity provision. *See* Hart v. Sim-

ons, 223 F.Supp. 109 (E.D.Pa.1963), and particularly fn. 1 of that case, giving the history of *Treadwell* in the Western District of Pennsylvania.

However, the Government brief advises us that in the *Hart* case the Government persisted in its claim that FECA barred contribution, and that the ultimate settlement between Hart and Simons provided that the third-party complaint should be dismissed. Civil No. 27953 (E.D.Pa.), Stipulation of Dismissal filed Nov. 2, 1964.

13. As mentioned above, certiorari was dismissed *sub nom.* United Air Lines v. United States, 379 U.S. 951, 85 S.Ct. 452 (1964).

14. 112 U.S.App.D.C. at 132, 300 F.2d at 724.

ation if the building owner is held liable the damages payable should be limited to one-half of the amount of damages sustained by plaintiff, assuming the facts would have entitled the owner to contribution from the employer if the statute had not interposed a bar. A tortfeasor jointly responsible with an employer is not compelled to pay the total common law damages. The common law recovery of the injured employee is thus reduced in consequence of the employee's compensation act, but that act gave him assurance of compensation even in the absence of fault.

### II. THE INDEMNITY CLAIM

#### A. Contract Indemnity

■ As Appellant's brief notes (at p. 12), his amended third-party complaint "sought indemnification * * * on the theory that the Government impliedly contracted in the leasing agreement to maintain the premises in a safe manner." This effort to seek indemnity on the basis of consensual obligation is in harmony with the exclusivity provision of the FECA. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). But that contract action runs into the provision of the Tucker Act which limits the District Court's jurisdiction to claims "not exceeding $10,000 in amount, founded * * * upon any express or implied contract with the United States." [15] Appellant's brief says it is possible for a verdict to be rendered for less than $10,000, but since there obviously was and is no intent to limit the indemnity claim to this amount, this is without significance. The contract indemnity claim was properly dismissed by the District Court as beyond its jurisdiction.

Appellant properly points out that this ruling encumbers the judicial system with the disadvantage of two lawsuits. The problem is particularly aggravated by the circumstance that the extent of the government's factual responsibility will be litigated, in a sense, in the District Court, as a reason for invoking *Martello*, and again in the Court of Claims. Modern judicial administration strongly favors disposition of related claims in a single action. Where there is no jurisdictional barrier, the courts have shown flexibility and inventiveness in furtherance of this objective.[16] We see no way, however, to clear the jurisdictional hurdle of the Tucker Act.

Pending legislative attention to this problem, hardship and exasperation can perhaps be mitigated by the lessor's calling on the government to participate in the District Court action, and requesting the Court of Claims for protective rulings obviating duplicative testimony and litigation.

#### B. Non-Contract Indemnity

Appellant's brief says that in any event he has standing to maintain an indemnity claim under the Federal Tort Claims Act, and that the indemnity claim "essentially sounds in tort, although emanating from the respective positions of the [parties] as lessor and lessee."

■ There are at least some instances where an action in tort will lie for negligence or other wrong in performance of obligations also imposed by contract.[17] Though distinctions between contract and tort claims do not retain historic significance under modern judicial administration, they retain vitality in view of the jurisdictional pro-

15. 28 U.S.C. § 1346(a) (2) (1964).

16. United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951); D. C. Transit System, Inc. v. Slingland, 105 U.S.App.D.C. 264, 266 F. 2d 465, 72 A.L.R.2d 1290 (1959).

17. Wardman v. Hanlon, 52 App.D.C. 14, 280 F. 988, 26 A.L.R. 1249 (1922).

18. Jaeger v. United States, 129 U.S.App. D.C. 319, 394 F.2d 944 (1968).

visions of laws consenting to actions against the government.[18]

Appellant contends, as nearly as we can make out, that the indemnity claim in the amended complaint sounds in tort because the issues—the lessee's performance in a safe and reasonable manner—would realistically be decided on the basis of tort law. Yet neither the original third-party claim for contribution, nor the second claim that the third-party plaintiff "is entitled to be fully indemnified by the United States * * * by virtue of its contract with the third party defendant," can fairly be read to present a claim for non-contractual indemnity. Nor is the theory of indemnity not based on contract briefed by appellant except in summary, undeveloped, and unsupported terms. For us to decide this case on a non-contractual indemnity theory that would avoid the joint liability barrier[19] would require us to elaborate a tangential reference in appellant's brief concerning a most complicated and undefined area of restitution,[20] and then to twist the pleadings to fit such a doctrine.

If this case fairly presented a claim of non-contract indemnity we would be confronted with a difficult question. The cited rulings in the Eighth and Ninth Circuits dismissing indemnity claims as barred by the exclusivity provision of the Employees' Compensation Act assume that indemnity and contribution claims against the government employer necessarily stand on the same footing. That is contrary to the theory put forward (in dictum) by Judge Keech in Coates v. Potomac Elec. Power Co., 95 F.Supp. 779, 783–784 (D.D.C.1951), where contribution against an employer was prohibited but a claim on indemnity was considered maintainable, as resting on an independent duty by indemnitor to the indemnitee.

It may be interjected that in Slattery v. Marra Bros., 186 F.2d 134, 138–139 (2d Cir. 1951), cert. denied 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351, Judge Learned Hand saw a distinction between an indemnity claim based merely on differences in degree of fault between joint tortfeasors having no other connection with each other, which would be barred by the exclusivity provisions, and an indemnity claim based on their legal relationship—arising out of facts and circumstances other than their linkage with the same victim and establishing an independent duty based in contract or possibly in tort. Curiously this aspect of *Slattery* seems to have been bypassed by the Ninth Circuit in United Air Lines v. Wiener, *supra*.[21]

We do not express views on these issues because we feel they were not fairly tendered in this case, and because they are subtle and important enough to call for a concrete fact setting and full briefing before they are decided. A fair reading of appellant's claims is that the original third-party complaint rested on a concept of contribution[22] and the amended complaint

---

19. Slattery v. Marra Bros., Inc., 186 F.2d 134 (2d Cir.), cert. denied 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951).

20. *See e. g.* PROSSER, TORTS, § 48 (3d ed. 1964); RESTATEMENT OF RESTITUTION, §§ 93–94 and Reporters' Notes (1935). *See also* Annot. 140 A.L.R. 1306 (1942).

21. That court points out (335 F.2d at 403) that *Slattery* says that mere differences in degree or kind of fault ("passive" versus "active" negligence) should not strip a joint tortfeasor of the protection of the exclusivity provision. The doctrine used in the dictum of *Coates*, 95 F.Supp. at

783–784, is that an independent duty may be owed by the tortfeasor who "was the active wrongdoer and was primarily liable for the injury sustained," citing, *inter alia*, Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712 (1896).

22. It is referred to as a claim for "contribution" by both the District Court and appellant in his brief (p. 7ff), although some of the language of the claim which seeks reimbursement in whole as well as in part might, taken by itself, be regarded as a soft whisper of a theory of non-contract indemnity.

on a theory of contract indemnity. Confining our discussion to those claims, and without undertaking to resolve the divergences in District Court precedents on claims of non-contract indemnity,[23] we conclude that the judgment should be

Affirmed.

---

23. The *Coates* dictum provides a basis for indemnity claims against employers. Yet in Christie v. Powder Tool Corp., 124 F. Supp. 693 (D.D.C.1954), Judge Pine dismissed a non-contract indemnity claim where the employer was the Government. Judge Pine noted a difference in wording and implied there was a distinction in meaning between the exclusivity provisions of § 7(b) of the Federal Employees Compensation Act, 5 U.S.C. § 757(b) (1964), now 5 U.S.C. § 8116(c) (Supp. III, 1968), and § 5 of the Longshoremen's and Harbor Workers' Compensation Act. But as already noted in *Weyerhaeuser*, the Supreme Court later referred to these provisions as "nearly identical" (372 U.S. at 602, 83 S.Ct. 926, 10 L.Ed.2d 1), and in United Air Lines v. Wiener, *supra*, the Ninth Circuit referred to them as "indistinguishable."