Colston A. LEWIS, Plaintiff,

v.

The Honorable Jimmy CARTER et al., Defendants.

Civ. A. No. 77–1221.

United States District Court,
District of Columbia.

Aug. 16, 1977.

the United States and the Chair of the Equal Employment Opportunity Commission (EEOC). Plaintiff's complaint, entitled "Complaint for Breach of Contract and Reinstatement to Position of Employment," charges that defendants unlawfully terminated him from his position as a member of the EEOC. Injunctive relief resulting in his reinstatement to the position and damages in excess of $10,000 are sought.[1]

While the primary issue presented by this litigation is whether the President has the power to remove at will a member of the EEOC, the Court's immediate concern with respect to that issue is its effect on plaintiff's motion for a preliminary injunction presently pending before the Court. Also before the Court is defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.

After full consideration of the parties' memoranda of points and authorities and the oral argument of counsel, the Court finds that it has jurisdiction only over the equitable relief sought by plaintiff and that, under the circumstances of this case, issuance of a preliminary injunction would be inappropriate. Pursuant to the following findings and conclusions, the Court determines that the motion for a preliminary injunction should be denied and that defendants' motion to dismiss for lack of subject matter jurisdiction should be granted with respect to the damage claims.

T. Carlton Richardson, Washington, D. C., for plaintiff.

David R. Schlee, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge:

On July 14, 1977, Colston A. Lewis instituted this action against the President of

## FINDINGS OF FACT

*Background*

The relevant facts are not in dispute. In 1972, plaintiff was appointed to a five-year term as a member of the EEOC, that term expiring June 30, 1977. The statute provides that a member's term will be auto-

---

1. In addition to back pay, the plaintiff seeks punitive and exemplary damages. The latter claims appear to be suspect and without merit.

*See Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

matically extended until a successor is nominated and qualified:

> [A]ll members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted.

42 U.S.C. § 2000e–4(a). The President has not nominated anyone to succeed plaintiff.

In a letter dated June 3, 1977, the President thanked plaintiff for his years of service, noting that his term was to end June 30, 1977. Plaintiff also received a later letter, dated June 29, 1977, from Robert J. Lipshutz, Counsel to the President. Mr. Lipshutz confirmed an earlier conversation plaintiff had had with Deputy Counsel Margaret McKenna to the effect that plaintiff would not be permitted to serve according to the holdover provisions of the statute and, therefore, his service as a Commissioner would end as of the close of business on June 30, 1977.[2] In a memorandum, also dated June 29, 1977, defendant Eleanor Holmes Norton, Chair of the EEOC, notified plaintiff of the termination procedure to be followed in his case.

Since June 30, 1977,[3] plaintiff has been prevented from acting as a member of the EEOC. After allegedly taking informal steps to gain his reinstatement, plaintiff filed this action.

2. The letter incorrectly refers to the holdover provision as 42 U.S.C. § 2008–4(a).

3. While plaintiff apparently had access to his office and staff through July 1, 1977, that access was granted for the removal of personal papers and property.

4. If brought in a district court, a case may be transferred to the Court of Claims pursuant to

*Jurisdiction*

Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1346, based upon a violation of an act of Congress creating a right to employment and an amount in controversy exceeding $10,000. Defendants have moved to dismiss for lack of subject matter jurisdiction, contending that plaintiff's contractual claims are cognizable only under portions of the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, which specifically limit jurisdiction in the district courts to claims under $10,000. Plaintiff requests approximately $15,000 in back pay and lost benefits.

■ Defendants' position with regard to plaintiff's contractual claims appears well-taken. *Murray v. United States*, 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968). Claims exceeding $10,000 must be brought in the Court of Claims, 28 U.S.C. § 1491.[4] Plaintiff, however, also seeks immediate reinstatement—equitable relief unavailable in the Court of Claims.[5] As support for his claim for reinstatement plaintiff relies upon the statutory provision setting forth the term of office of members of the EEOC, 42 U.S.C. § 2000e–4(a). That foundation, plus the fact that plaintiff is bringing the action against officers of the United States, appears to bring the suit within the jurisdictional grant of § 1331.

*Preliminary Injunction*

■ As noted above, the primary issue involved in this litigation is whether the President has the power to remove at will a member of the EEOC. The few cases on

28 U.S.C. § 1406(c) if within the exclusive jurisdiction of the Court of Claims. Since this Court has jurisdiction over a portion of the present action, transfer under § 1406(c) appears inappropriate

5. Since equitable relief may only be afforded by the Court of Claims pursuant to final judgment, 28 U.S.C. § 1491, as a practical matter such reinstatement would be unavailable there.

the issue of the President's removal power indicate that whether an agency's officers are removable at the will of the President depends upon the character of the functions which Congress has confided in the agency. *Wiener v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958); *Humphrey's Executor v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), and *Myers v. United States,* 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926). If those functions are of a quasi-legislative or quasi-judicial nature, as opposed to purely executive, Congress can validly limit the President's removal power by setting terms of office during which officers can only be removed for cause specified by Congress.

The parties to the present action contest the nature of the functions of the EEOC. Defendants attempt to characterize those functions as primarily executive, while plaintiff contends they are legislative or judicial in nature. It is apparent that the EEOC has not been granted the broad quasi-legislative and quasi-judicial functions conferred by Congress upon other agencies. However, it is also apparent that the EEOC does possess a quantity of functions which are legislative or judicial in character, including information collection and dissemination and the issuance of advisory opinions. The question, of course, is where to draw the line between executive and non-executive agencies. Should only those officials in agencies with purely executive functions be subject to removal at the will of the President or should the test be whether the agency in question has functions which are only predominantly executive. The Supreme Court has left the question open:

> To the extent that, between the decision in the *Myers* case, which sustains the unrestrictable power of the President to remove purely executive officers, and our present decision that such power does not extend to an office such as [Commissioner of the Federal Trade Commission], there shall remain a field of doubt, we leave

such cases as may fall within it for future consideration and determination as they may arise.

*Humphrey's Executor v. United States,* 295 U.S. at 632, 55 S.Ct. at 875.

Although the present action offers an opportunity for the Court to delineate further the President's removal power, that opportunity is limited by the nature of the motion before the Court. The relevant factors to be considered in ruling on a motion for preliminary injunction are found in *Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). The single factor involving the merits of the action requires only that there be a substantial probability of success on the merits. The law in this area, however, offers limited guidance, especially in its application to the EEOC, which does not have the extensive legislative or judicial functions of an agency such as the Federal Trade Commission. It is clear that this is not an instance where the legal issue to be resolved is so settled in the Court's mind that the remaining relevant factors assume little importance. *See Youngstown Sheet & Tube Co. v. Sawyer,* 103 F.Supp. 569, 576 (D.D.C.) aff'd, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952).

This case presents a constitutional question involving the separation of powers in the federal government, with the relief requested constituting interference by this Court with an action taken by the President pursuant to his evaluation of the Executive's constitutional powers. Absent a clear indication of success on the merits or severe and irreparable harm to plaintiff or the public, the Court feels that such interference is unwarranted, particularly in light of the summary nature of preliminary injunction proceedings.

■ In making this finding, the Court is influenced by the limited relief available should the preliminary injunction be granted. The statute provides for an extension

962

of plaintiff's term for a period of sixty days, to and including August 29, 1977.[6] Thus, the available injunctive relief consists of allowing plaintiff to act as a member of the EEOC for approximately two weeks.

Whether the foregoing considerations are made pursuant to the specific factors of *Virginia Petroleum Jobbers*[7] or are merely a part of the general discretionary power of the Court in ruling on a motion for temporary injunctive relief, the Court finds that issuance of a preliminary injunction under the circumstances here presented would be inappropriate.

## CONCLUSIONS OF LAW

·1. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 insofar as plaintiff claims prospective equitable relief. However, the Court lacks jurisdiction over plaintiff's damage claims because the Tucker Act, 28 U.S.C. §§ 1346, 1491, limits the jurisdiction of the district courts to claims under $10,000. The Court concludes that plaintiff's damage claims must be dismissed.

■ 2. On a motion for a preliminary injunction, the Court must consider: 1) a substantial probability of success on the merits; 2) irreparable injury; 3) harm to the opposing party; and 4) the public interest. *Virginia Petroleum Jobbers Ass'n v. FPC, supra. See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir. 1977).

3. The President's removal power depends upon the nature of the functions which Congress has conferred on the agency in question. If the functions are of a legislative or judicial nature, as opposed to

purely executive, limitations by Congress on the President's power to remove officers of the agency are valid. *Wiener v. United States, supra; Humphrey's Executor v. United States, supra.*

■ 4. Plaintiff has not sufficiently demonstrated that the Equal Employment Opportunity Commission has the necessary legislative or judicial functions to be immune from the President's removal power. Therefore, the probability of success on the merits is not so certain as to render the remaining factors to be considered less important. *See Youngstown Sheet & Tube Co. v. Sawyer, supra.*

5. In light of the limited relief available, plaintiff has failed to show irreparable injury resulting from the denial of the preliminary injunction.

6. The public interest is not served by an unwarranted interference by the Court with an action taken by the President pursuant to the latter's evaluation of his constitutional powers.

■ 7. In a case involving the separation of powers in the federal government, the Court must carefully consider the appropriateness of issuing temporary injunctive relief which substantially interferes with an action taken by the Executive pursuant to the latter's evaluation of Presidential powers.

8. The limited relief available to plaintiff in this proceeding is outweighed by the magnitude of the interference with the action taken by the President.

■ 9. The Court, after balancing the equities, concludes that the issuance of a preliminary injunction would be inappropriate.

6. The parties appear somewhat confused about when plaintiff's extended term expires. Defendants assert that the latest date plaintiff can possibly serve is August 29, 1977, sixty days after the end of his original term. The statute, however, provides that should the President nominate someone to succeed plaintiff prior to the end of the sixty day period, plaintiff could then serve until that person was qualified or until the adjournment sine die of the session of the Senate in which the successor was nominated. Since no one has been nominated to succeed plaintiff, the August 29, 1977, date

appears correct. Plaintiff's contention at oral argument that the sixty day period refers to legislative days and therefore should be tolled while Congress is on its recess is not supported by the wording of the statute and is without merit.

7. In light of the limited relief available, it does not appear that plaintiff's injury will be irreparable in the absence of the injunction. Further, the public interest would be served by curtailing unnecessary conflicts between the courts and the Executive.